1
2
3
4
5
6
7
8
9

<div style="text-align:center">

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

</div>

SUSAN MAE POLK,

                Petitioner,

    v.

KIMBERLY HUGHES,

                Respondent.

Case No. 12-cv-05986-VC  (PR)

**ORDER GRANTING MOTION TO DISMISS; GRANTING CERTIFICATE OF APPEALABILITY**

Re: Dkt. No. 112

10

<div style="text-align:center">

**INTRODUCTION**

</div>

11   Petitioner Susan Mae Polk has filed a *pro se* petition for a writ of habeas corpus pursuant
12   to 28 U.S.C. § 2254, challenging her conviction for second degree murder.  She asserts 91 claims.
13   The petition is dismissed as untimely because she filed it several months after the federal one-year
14   deadline expired and there is no basis for statutory or equitable tolling.

15

<div style="text-align:center">

**BACKGROUND**

</div>

16   On August 27, 2002, Polk was indicted in Contra Costa County Superior Court on charges
17   that she murdered her husband, Felix Polk, using a knife.  1 Clerk's Transcript ("CT") 285-86.  On
18   August 25, 2005, trial commenced, but, on October 17, 2005, a mistrial was declared due to
19   defense counsel's family emergency.  4 CT 1189; 7 CT 1876.  Polk began representing herself on
20   January 20, 2006.  7 CT 1973.  Her second trial began on February 27, 2006.  8 CT 2396-97.  On
21   June 16, 2006, the jury found Polk guilty and, on February 23, 2007, the trial court sentenced her
22   to sixteen years to life in prison.  12 CT 3250-52; 13 CT 3800-01.  Following restitution hearings,
23   the trial court ordered Polk to pay Contra Costa County for services provided to her during her
24   trial.  16 CT 4362-64.

25   Polk appealed from the judgment and the post-judgment restitution order.  14 CT 3810,
26   3814; 16 CT 4445-47.  On December 13, 2010, the California Court of Appeal affirmed the
27   judgment in a partially published opinion and remanded for a new restitution hearing.  Ex. E;
28   *People v. Polk*, 190 Cal. App. 4th 1183 (2010).  On March 30, 2011, the California Supreme Court

<div style="writing-mode:vertical-rl; text-align:center">United States District Court<br>Northern District of California</div>

United States District Court
Northern District of California

1   denied review.  Exs. F, G.

2          Polk filed several petitions in the California Supreme Court before that Court denied

3   review of her direct appeal.  They included: (1) a habeas petition seeking "relief from appellate

4   counsel's violation of my right to attorney client privilege," which was summarily denied on the

5   merits.  Polk's Table of Appendices at 23; Resp. Ex. W; (2) a petition for a writ of

6   mandate/prohibition, which the Court transferred to the Court of Appeal.  Polk's Table of

7   Appendices at 23; Resp. Ex. DD; (3) a petition for review of the appellate court's denial of the

8   above-referenced mandamus petition, which was denied without comment.  Polk's Table of

9   Appendices at 24; Resp. Ex. EE; (4) a petition for review of the appellate court's denial of her

10  motion to replace or substitute in for appellate counsel, which the Court denied without comment.

11  Polk's Table of Appendices at 24; Resp. Ex. FF; (5) a habeas petition challenging her conviction,

12  which the Court denied with a citation to *In re Clark*, 5 Cal. 4th 750.  Polk's Table of Appendices

13  at 22, Resp. Ex. II; and (6) a habeas petition challenging her conviction, which the Court denied

14  with a citation to *Clark*, 5 Cal 4th at 767-69.  Polk's Table of Appendices at 25; Resp. Ex. LL.

15         After the California Supreme Court denied review of her direct appeal, Polk signed a proof

16  of service for a petition for a writ of habeas corpus on June 28, 2012, which was filed in the

17  California Supreme Court on July 16, 2012, as Case No. S204067.  Ex. PP.[1]  On October 31,

18  2012, the California Supreme Court denied the petition, citing *Clark*, 5 Cal. 4th 750, 767-69

19  (1993).  Resp. Ex. PP.

20         On November 7, 2012, Polk signed a proof of service for this federal petition for a writ of

21  habeas corpus, which was filed on November 26, 2012.  Dkt. No. 1.  Polk has raised ninety-one

22  claims in her petition.  On January 17, 2014, Respondent Kimberly Hughes filed a 222 page

23  response to the Court's order to show cause why the petition should not be granted, including a

24  motion to dismiss on the grounds that the petition was untimely, that over seventy claims were

25  procedurally defaulted and that two claims were unexhausted.  Dkt. No. 49.  Polk responded by

26

27  _____

    [1] As a *pro se* prisoner, Polk receives the benefit of the prisoner mailbox rule, which deems most
    documents filed when the prisoner gives them to prison officials to mail to the court.  *See Stillman
28  v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003).

filing numerous motions and objections. Dkt. Nos. 52-58. On March 24, Polk filed a traverse and, on March 28, 2014, she filed a request to file an amended reply, a request for an extension to file part two of reply, an objection, a motion to strike and seal and an amended traverse. Dkt. Nos. 59-66. On April 14, 2014, the case was reassigned to this judge. On April 18, 2014, Polk filed more objections with exhibits, on April 25, 2014, she filed amended objections, on April 28, 2014 she filed a declaration that she was being obstructed from access to the court, on May 5, 2015, Polk filed more objections and a declaration. Dkt. Nos. 69-73, 75-76. On June 5, 2014, the Court responded to Polk's motions and requests and set a briefing schedule for Hughes to file a renewed motion to dismiss. Dkt. No. 85. In this order, the Court noted that Polk had filed so many documents that neither the Court nor Hughes could be expected to review and understand them and stated that no further motions for amendments or for oversized briefs would be considered.

In July 2014, Polk filed numerous documents unrelated to the motion to dismiss, including amendments to earlier documents. On September 4, 2014, the Court ordered the unrelated documents stricken from the Court's docket and reiterated that it would not accept or consider amendments to documents because it could not be expected to keep track of Polk's lengthy and piecemeal filings. Dkt. No. 128.

On July 25, 2014, in accordance with the Court's order, Hughes filed a renewed motion to dismiss the petition as untimely and, in the alternative, to dismiss over seventy claims as procedurally defaulted. On October 6, 2014, Polk filed an opposition and, on November 3, 2014, Hughes filed a reply.[2] The motion was then fully briefed. However, Polk filed more documents that were received, but not filed, by the Clerk. The Court directed the Clerk to return them to Polk. Dkt. No. 151. Polk then filed a motion for an extension of time to object to Hughes' reply and a motion to waive the page limit for "reply to Hughes' objection and objections to Hughes' reply," which the Court denied. Dkt. Nos. 149, 154, 155. Polk has now filed the following

---

[2]In her opposition, Polk incorporates by reference her second amended habeas petition and her first amended reply, part one, and the exhibits and appendices in support of the reply. The Court granted Polk's request to file an oversized opposition of forty-three pages. Dkt. No. 89. Polk may not circumvent the page length limit by incorporating other briefs. Therefore, the Court does not consider them.

United States District Court
Northern District of California

documents with corresponding exhibits and charts: (1) "objections to order denying motions for an extension of time to object to respondent's reply and to waive page limits and striking of petitioner's reply to Hughes's objection and objections;" (2) "objections and motion for sanctions for violations of Federal Rule of Civil Procedure Rule 11(b) in respondent's statement of facts in her answer (dkt. no. 49-1 at 1-34);" and (3) "objections to order striking petitioner's renewed motion for an evidentiary hearing and to expand the record." Dkt. Nos. 157-63. The Court has reviewed these filings and they are denied as either nonresponsive to the motion to dismiss or as adding nothing to Polk's well-articulated arguments in her forty-three page opposition to the motion to dismiss.

Hughes argues the petition must be dismissed because it was not filed within the one-year statute of limitations. In the alternative, she argues over seventy claims are procedurally defaulted. As discussed below, the Court grants the motion to dismiss based on untimeliness.

## DISCUSSION

### I. Applicable Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became law on April 24, 1996 and imposed a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. Since then, petitions filed by prisoners challenging noncapital state convictions or sentences must be filed within one year of the latest of the date on which: (A) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (B) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented the petitioner from filing; (C) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (D) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

Under 28 U.S.C. § 2244(d)(1)(A), Polk's judgment became final and the limitations period began on June 28, 2011, ninety days after the California Supreme Court denied review. *See Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999) (if a petitioner fails to seek a writ of certiorari from the United States Supreme Court, AEDPA's one-year limitation period begins to run on the

4

date the ninety-day period defined by Supreme Court Rule 13 expires).[3] The deadline for Polk to file her federal petition was June 28, 2012.  She filed the petition on November 7, 2012.  Therefore, unless Polk qualifies for statutory or equitable tolling, the petition is untimely.

**II. Statutory Tolling**

AEDPA's one-year limitations period is tolled under § 2244(d)(2) for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  On June 28, 2012, the last day of the federal limitations period, Polk filed a proof of service for a petition for a writ of habeas corpus, which she submitted to the California Supreme Court.  Because Polk filed her state petition on the last day of the federal limitations period, there was no time left in the limitations period after the California Supreme Court denied review on October 31, 2012.  Polk did not deliver her federal petition to prison officials for mailing until November 7, 2012.  Therefore, even if the time was tolled while the petition was pending in the California Supreme Court, it was seven days late.[4]

However, because the California Supreme Court denied the petition with a citation to *Clark*, 5 Cal. 4th at 767-69, the state habeas petition did not toll the statute of limitations.  The California Supreme Court's citation to *Clark* at pages 767-69 signaled its determination that the petition was untimely.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (untimely state habeas petitions not "properly filed" for purposes of § 2244(d)(2)); *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007) (no statutory tolling for any petition denied by state courts as untimely because it is considered "neither 'properly filed' nor 'pending'" within the meaning of § 2244(d)(2)).  The Supreme Court has held that, when a California court cites *In re Clark*, it signals a habeas petition has been denied as untimely.  *Walker v. Martin*, 131 S.Ct. 1120, 1124 (2011) (federal habeas petition procedurally defaulted by California's untimeliness bar); *see also Bonner v. Carey*, 425 F.3d 1145, 1149 (9th Cir. 2005) (under *Pace*, if a state court denies a petition as untimely, none of

---

[3] Polk does not argue that § 2244(d)(1)(B), (C), or (D) apply.

[4] Although Polk filed many petitions in the California Supreme Court before that Court denied review of her direct appeal, they do not toll the federal statute of limitations.  *See Waldrip v. Hall*, 548 F.3d 729, 735 (9th Cir. 2008) (petition filed in state court before the running of the federal limitations period had no effect on the timeliness of the federal petition) .

United States District Court
Northern District of California

1    the time before or during the court's consideration of that petition is statutorily tolled).  Because

2    Polk's state habeas petition did not toll the statute of limitations, it ran unabated until she filed her

3    federal petition on November 7, 2012, more than four months after the statute had expired.

4        Polk argues that *Clark* did not refer to the untimeliness of her petition, but to the fact that it

5    was a successive petition, and cites cases holding that successive petitions are "properly filed"

6    under § 2244(d)(2).  However, *Clark* stated, "a successive petition presenting additional claims

7    that could have been presented in an earlier attack on the judgment is, of necessity, a delayed

8    petition."  *Clark*, 5 Cal. 4th at 770.  Thus, *Clark* itself held that a successive petition is a delayed

9    petition.  *See also Gonzalez v. Runnels*, 2008 WL 80744, *3 (E.D. Cal Jan. 7, 2008) ("under *Pace*,

10   whether the state supreme court meant to indicate that the petition was untimely or successive

11   would be essentially a distinction without a difference in the context of statutory untimeliness

12   under AEDPA").  The cases Polk cites are inapplicable: *Jenkins v Johnson*, 330 F.3d 1146, 1153

13   (9th Cir. 2003), was overruled by *Pace*; *Maxwell v. Roe*, 628 F.3d 486, 496 (9th Cir. 2010),

14   considered the petition on the merits; *Cross v. Sisto*, 676 F.3d 1172, 1178 (9th Cir. 2012),

15   addressed the California Supreme Court's citation to *Ex parte Swain*, 34 Cal. 2d 300 (1949);

16   *Carlin v. Wong*, 2007 WL 608112 (N.D. Cal. Feb. 24, 2007) did not address the state courts'

17   citation to *Clark*; and, *Artuz v. Bennett*, 531 U.S. 4, 8 (2000), as explained in *Pace*, 544 U.S. at

18   413, held that time limits on post-conviction petitions are conditions to filing such that an

19   untimely petition would not be "properly filed."

20       Therefore, statutory tolling does not apply.

21   **III. Equitable Tolling**

22       AEDPA's statute of limitations is subject to equitable tolling in appropriate cases.  *Holland*

23   *v. Florida*, 560 U.S. 631, 645 (2010).  However, "a petitioner is entitled to equitable tolling only if

24   he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary

25   circumstance stood in his way and prevented timely filing."  *Id.* at 649; *Miles v. Prunty*, 187 F.3d

26   1104, 1107 (9th Cir. 1999) ("When external forces, rather than a petitioner's lack of diligence,

27   account for the failure to file a timely claim, equitable tolling of the statute of limitations may be

28   appropriate.").  "The threshold necessary to trigger equitable tolling under AEDPA is very high,

United States District Court
Northern District of California

6

1  lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002).

2  The petitioner must show that "the extraordinary circumstances were the cause of his untimeliness

3  and that the extraordinary circumstances ma[de] it impossible to file a petition on time." *Ramirez*

4  *v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009) (alteration in original) (internal quotation marks and

5  citation omitted).  Where a prisoner fails to show "any causal connection" between the grounds

6  upon which he asserts a right to equitable tolling and his inability to timely file a federal habeas

7  petition, equitable tolling will be denied.  *Gaston v. Palmer*, 417 F.3d 1030, 1034-35 (9th Cir.

8  2005).

9          In *Pace*, the Supreme Court instructed that, if a state prisoner is uncertain about whether a

10  state post-conviction petition is timely, she should "file a protective petition in federal court and

11  ask the district court to stay and abey the federal habeas proceedings until state remedies are

12  exhausted."  *Pace*, 544 U.S. at 416; *see also Lakey v. Hickman*, 633 F.3d 782, 787 (9th Cir. 2011)

13  (*Pace* advised state prisoners to file a protective federal petition to avoid a possible timeliness

14  bar).  Polk had notice that her state petition might be denied as untimely because the California

15  Supreme Court had denied two of her previous petitions with a citation to *In re Clark*.  *See Curiel*

16  *v. Miller*, __ F.3d __, 2015 WL 1259520, *4 (9th Cir. Mar. 19, 2015) (because state courts had

17  denied two previous state petitions as untimely, petitioner should have filed a protective petition in

18  federal court, as suggested in *Pace*).  If Polk had mailed a duplicate copy of her state habeas

19  petition to this Court on the same day she filed it in state court, her federal petition would have

20  been timely.  However, she did not do so.

21          Polk argues that she could not have filed a protective federal petition contemporaneously

22  with her state petition or while it was pending because the prison law librarian withheld the 2012

23  edition of the Continuing Education of the Bar ("CEB") publication, *Appeals and Writs*, and the

24  decision in *Walker v. Martin*.  Opp. at 24.  But *Walker* held that a habeas petition was procedurally

25  barred by California's timeliness rule; it did not address whether a federal petition was untimely

26  under the federal statute of limitations.  *Walker*, 131 S.Ct. at 1131.  Furthermore, California

27  jurisprudence holding that a state habeas petition must be filed without substantial delay, on which

28  *Walker* relied, was decided many years before Polk was convicted.  *Id.* at 1128 (citing *In re*

1    *Gallego*, 18 Cal. 4th 825 (1998); *Clark*, 5 Cal. 4th at 765 n.5; and *In re Robbins*, 18 Cal. 4th 770,

2    780 (1998)).  Polk cannot claim ignorance of this California authority.  Polk also fails to explain

3    how the lack of the CEB volume hindered her filing a protective federal petition.  *See Curiel*, 2015

4    WL 1259520, at *4 ("a *pro se* petitioner's lack of legal sophistication is not, by itself, an

5    extraordinary circumstance warranting equitable tolling.").

6            Citing *Ford v. Hubbard*, 330 F.3d 1105 (9th Cir. 2003), Polk contends she is entitled to

7    equitable tolling because she was denied a complete set of her legal papers by appellate counsel

8    and then by the prison.[5]  However, on remand from the Supreme Court in *Ford v. Pliler*, 590 F.3d

9    782, 790 (9th Cir. 2009), the Ninth Circuit held that, because the petitioner was aware of the

10   factual basis of his claims before he obtained his legal materials, he was not entitled to equitable

11   tolling due to the alleged delay in obtaining his trial files from appellate counsel.  Because Polk

12   represented herself at her trial, she was aware of the factual basis of her claims.  Furthermore, the

13   brief delay in Polk's receiving most of her files did not prevent her from meeting the federal

14   deadline.  *See Curiel*, 2015 WL 1259520, at *4 (petitioner's receipt of files in May, when federal

15   deadline was September, did not prevent him from meeting the deadline by filing a protective

16   petition in federal court and requesting a stay until state remedies were exhausted).

17           Polk also objects to the fact that she did not have unrestricted access to her entire legal file

18   in her cell until May 10, 2012.  Opp. at 5, citing Dkt. No. 64-1 at 14-20.  However, as

19   acknowledged by Polk, for security reasons, prison regulations limit the amount of property that

20   may be kept in a cell to six cubic feet of personal property and one cubic foot of legal materials.

21   *See* Dkt. 66 at 44 n. 16 (Traverse); California Code Regulations tit. 15, § 3161 (inmates may

22   possess up to one cubic foot of legal material related to their active cases in excess of the six cubic

23   feet of allowable property in their assigned living area; inmates may request their prison store

24   excess legal materials related to active cases exceeding the one cubic foot additional allowance).

25   Although "a complete lack of access to a legal file" may warrant equitable tolling, routine security

26

27   ───────────────

28   [5]In her opposition, Polk says that she was deprived of all her papers for eleven months.  However, based upon Polk's allegations in her initial reply, her appellate counsel mailed the records to her in two shipments: on April 19, 2011 and on June 24, 2011.  The prison delivered four boxes to her in August 2011 and three boxes in May 2012.  See Dkt. No. 66 (Traverse) at 48.

United States District Court
Northern District of California

1    restrictions do not.  *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009).  Polk does not contend

2    that she lacked access to her entire legal file, but only that she was not able to have her entire file

3    in her cell at the same time.  Especially in light of the fact that Polk acted as her own trial attorney

4    and, thus, was familiar with the basis of her claims, the lack of access to her entire file at one time

5    does not warrant equitable tolling.

6            Polk argues that she is entitled to equitable tolling because she was deprived of access to

7    the law library for eight months during the limitations period.  However, her amended traverse, to

8    which she refers, indicates that, from July 2011 through July 2012, she had access to the law

9    library or the library's paging system.  Dkt. 64 (amended traverse) at 81-87.  Polk also argues that

10   lack of access to sufficient writing supplies for eleven months of the statutory period justifies

11   equitable tolling.  However, Polk filed numerous documents in other cases during the relevant

12   time period, illustrating that she had adequate writing supplies.  *See* Renewed Mo. Dismiss at 15-

13   19 (during limitations period, Polk filed petitions, briefs and objections in the California Court of

14   Appeal, the California Supreme Court and civil rights complaints in the district court).  *See Yeh v.*

15   *Martel*, 751 F.3d 1075, 1079 (9th Cir. 2014) (petitioner's contention that he was unable to file

16   habeas petition because he was detained in special housing refuted by the fact that he filed three

17   state habeas petitions during this time); *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010)

18   (equitable tolling denied because petitioner was able to file several petitions in state court during

19   the time for which he sought equitable tolling).

20           Polk next argues equitable tolling is warranted because she did not receive timely

21   notification of the state court's final decision denying her petition, and she filed her federal

22   petition promptly after receiving notice of the denial.  The state court denial was issued on

23   October 31, 2012, and Polk signed the proof of service for the federal petition on November 7,

24   2012, so there could not have been much delay between the date the denial was issued and the date

25   Polk received notice.  Although Polk filed her federal petition "promptly" after receiving the

26   denial of her state habeas petition, because she waited until the last day of the one-year federal

27   limitations period to file her state petition, any brief delay in receiving the state petition or the

28   filing of the federal petition was not the cause of the untimeliness of her federal petition.  *See*

United States District Court
Northern District of California

9

1    *Gaston*, 417 F.3d at 1034 (alleged extraordinary circumstance must have caused the late filing).

2         Finally, Polk argues that equitable tolling applies because she was repeatedly a victim of

3    unprovoked verbal and physical abuse by other inmates and she was subjected to loud noise from

4    inmates' radios and televisions, which prevented her from working productively on her habeas

5    petition.  Opp. at 25-26.  These do not qualify as extraordinary circumstances warranting equitable

6    tolling.  *See Miranda*, 292 F.3d at 1066 (threshold to trigger equitable tolling "is very high, lest the

7    exceptions swallow the rule").  In any event, Polk's numerous other filings during the limitations

8    period show that she was able to work on her case and file documents despite the alleged

9    distracting prison conditions.

10        For all of these reasons, equitable tolling does not apply.

11   **IV. Actual Innocence**

12        If the failure to hear untimely constitutional claims would result in a miscarriage of justice,

13   the claims may proceed.  *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013).  The "miscarriage

14   of justice" exception is limited to habeas petitioners who can show that "a constitutional violation

15   has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S.

16   298, 327 (1995).  To pass through the *Schlup* gateway, "a petitioner must produce sufficient proof

17   of his actual innocence to bring him "within the 'narrow class of cases . . . implicating a

18   fundamental miscarriage of justice.'"  *Schlup*, 513 U.S. at 314–15 (quoting *McCleskey v. Zant*,

19   499 U.S. 467, 494 (1991)).  A petitioner must "show that it is more likely than not that no

20   reasonable juror would have convicted him in the light of the new evidence."  *Id.* at 327.  A

21   petitioner must support his claims "with new reliable evidence—whether it be exculpatory

22   scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not

23   presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases,

24   claims of actual innocence are rarely successful."  *Id.* at 324.  "By enumerating the categories of

25   evidence that could prove innocence, the Supreme Court made clear that less reliable kinds of

26   evidence cannot support an actual innocence claim."  *Lee v. Lampert*, 653 F.3d 929, 945-46 (9th

27   Cir. 2011) (citing *Schlup*, 513 U.S. at 324-28).

28        Polk makes the following arguments for actual innocence: (1) the trial judge's instruction

United States District Court
Northern District of California

10

that Felix Polk's death was a homicide removed that question from the jury's consideration; (2) the trial judge implicitly removed the element of intent from the jury's consideration by striking defense witness Dr. Cooper's testimony that Felix Polk was the aggressor; (3) the district attorney tampered with witnesses and exploited the judge's lopsided exclusionary rulings; (4) the district attorney lied to the jury; (5) some of the evidence has been misinterpreted; and (6) the trial judge excluded exculpatory evidence, including (a) the tape of Felix Polk's 911 calls in which he admitted Polk had not made any threats, and (b) her son Adam's testimony at a pretrial hearing that Polk never threatened Felix Polk.  Opp. at 58-59.  None of these arguments involves the type of trustworthy scientific, eyewitness or physical evidence envisioned in *Schlup* that would prove actual innocence.  Accordingly, Polk has no claim for actual innocence.

## CONCLUSION

Based on the foregoing, the Court orders as follows:

1. Polk's new motions and objections are denied.

2. The Court grants the motion to dismiss on the ground that the petition was untimely. The Court does not address Hughes' alternative argument that over seventy of Polk's ninety-one claims are procedurally defaulted.

3. The Court issues a certificate of appealability on the issue of whether Polk is entitled to equitable tolling.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (when a habeas petition is denied on procedural grounds, a Certificate of Appealability should issue when jurists of reason would find it debatable whether the procedural ruling was correct).

4. The Clerk of the Court will issue a separate judgment, terminate all pending motions and close the file.

**IT IS SO ORDERED**.

Dated:  March 24, 2015

VINCE CHHABRIA
United States District Judge